### Wood & Welder v. J. S. Thornton.

### No. 7381.

**1. Condition in Sale of Land Passing with the Land.**—A contract for sale of a large number of adjoining surveys included six surveys title to which was defective. The price for the latter was represented by a note executed by the purchaser. and it was conditioned that if at the end of two years the vendor had not perfected the title to the satisfaction of the vendee, the latter, on giving notice, would be entitled to have his note returned and the land to be surrendered. Sullivan, the vendee, sold the land to Wood & Welder, and they to Thornton; he assuming the payment of purchase money and other liens, and having a warranty deed from his vendors. Thornton paid the Sullivan note, although notified by him that he was dissatisfied with the title. In action of Wood & Welder for the purchase money against Thornton, *held:*

1. The payment by Thornton of the Sullivan note for the lands with defective titles was not a mere voluntary payment. Thornton had the right to elect to take the lands and rely upon the warranty given him in his deed. The condition passed with the land.

2. The sale of the land by Sullivan put it out of his power to pass upon the title. He could not restore the land upon declaring the title unsatisfactory after having sold it. The right to elect to rescind passed to his vendees.

3. The title in part failing, Thornton had the right of action upon his warranty to the extent of the failure, notwithstanding his payment of the Sullivan note.

**2. Immaterial Error.**—On a slight error in computation, not brought to the notice of the trial court, a case will not be reversed on appeal. See example.

**Appeal** from Bexar. Tried below before Hon. W. W. King.

*Lane & Mayfield*, for appellants.—1. The measure of damages upon a covenant of warranty of the title to realty is the purchase money actually paid therefor, with legal interest from the date of eviction. Turner v. Miller, 42 Texas, 418; Garrett v. Gaines, 6 Texas, 435; Glenn v. Mathews, 44 Texas, 400; Anding v. Perkins, 29 Texas, 348; 4 Kent Com., 475; Hall v. York, 22 Texas, 641; Durst v. Swift, 11 Texas, 273; Sutton v. Page, 4 Texas, 142.

2. The obligation for $13,289.25, evidenced by the contract between Skidmore and Sullivan, was for the entire purchase money of the said six surveys of land, one of which was the James Nowland survey, for which the vendor thereof, F. O. Skidmore, had no title whatever. And the perfection of the title to the same by F. O. Skidmore to the satisfaction of H. D. Sullivan was a condition precedent to the payment of said obligation; and the payment thereof by the appellee to his remote warrantor, F. O. Skidmore, before said title was perfected and before the five years had expired in which he was to perfect title, was a voluntary payment by the appellee, and imposed no liability upon appellants upon their covenant of warranty. 2 Pars. on Con., 528; The People v. Glann, 70 Ill., 232; Barney v. Giles, 11 N. E. Rep., 206; Moore v. Campbell, 12 N. E. Rep., 405; De Kay v. Bliss, 4 N. Y. State, 723; Johnson v. Latimer, 71 Ga., 470; Denver v. Riley, 7 Colo., 494.

3. A voluntary payment is a payment made by a person where he is not requested to make such payment by another, and where he is under no obligation to make the payment. Williams v. Miller, 1 Wash. Terr., 105; Durant v. Rodgers, 71 Ill., 121; Alton v. Mulledy, 21 Ill., 76; Watkins v. Trustees, 41 Mo., 302.

*Simpson & James*, for appellee.—As between Wood & Welder and J. S. Thornton, the payment by Thornton of the Skidmore note can not, on appellants' authorities, be considered a mere voluntary act, inasmuch as its payment was unconditionally required by Wood & Welder in the terms of their deed to Thornton; and the conditions did not exist at the time of its payment by Thornton which entitled the note to be credited by reason of the Nowland failure of title.

HENRY, Associate Justice.—We copy the following statement of this case from the brief of the counsel of appellants:

" This was a suit upon a contract executed by the appellee to appellants, for a consideration paid, to deliver to appellants 756 head of beeves on the first of April, 1886. Plaintiffs alleged, that the appellee failed to deliver 166 head thereof, and that the contract price paid by the appellants for the same was $18.01 per head.

" The suit was for the value of 166 head of beeves at the rate of $18.01 per head, and the sum of $50 for the reasonable value of appellants' ser-

vices, with their employes, in rounding up the cattle in Stout's pasture, at the request of appellee, with 8 per cent interest thereon from April 1, 1888.

" Defendant answered by a general denial and a plea in reconvention, setting up that the consideration of the contract sued upon was for a part of the purchase money, and grew out of a sale of twenty-seven surveys of land containing 33,995.3 acres, lying in Bee, Live Oak, and San Patricio counties, sold and conveyed by the appellants to the appellee by deed on the 9th day of March, 1888; and that said appellants had covenanted therein to deliver possession thereof to appellee on the 1st of April, 1888, and to warrant and defend the title to all of said twenty-seven surveys of land; that there was due and owing upon said land for State and county taxes thereon, in the year 1888, the sum of $304.96; and that in a certain suit in the Circuit Court of the United States for the Western District of Texas judgment had been rendered against the appellee for 385⅓ acres of the James Noland survey, lying in Bee County, which was one of the twenty-seven surveys conveyed by appellants to appellee, and that appellants were liable to him upon the covenants of warranty of title for purchase price paid therefor at $2 per acre. All of which appellee pleaded in reconvention, and prayed for affirmative relief, and judgment against appellants.

" Plaintiffs set up in supplemental petition, in replication to defendant's plea in reconvention: That on the 3d day of May, 1884, F. O. Skidmore and Dickson were the owners of twenty-one surveys of land lying in Bee and adjoining counties, and there were six surveys adjoining and intermingled with the twenty-one surveys, which belonged to unknown owners, and which six surveys are as follows, to-wit, 1156 acres James Noland survey, 701 acres David Daugherty survey, 128 acres David. Daugherty survey, 2104 acres in three surveys in the name of M. G. Frazier. That on said date said Skidmore and Dickson sold and conveyed said twenty-seven surveys of land, including the six to which they had no title, by deed with covenants of warranty, to H. D. Sullivan.

" That the consideration for the twenty-one surveys for which the grantors had title was fully paid, but that the consideration for the six surveys for which the grantors had no title was the sum of $13,289.25, and was not paid, and was not to be paid until the expiration of five years from that date, in which time, if the said grantor Skidmore did not perfect his title to said six surveys to the satisfaction of the said Sullivan, then the said Skidmore was to deliver up the said note to the said Sullivan, and said Sullivan was to reconvey said six surveys.

" This contract for the $13,289.25, with its conditions and stipulations, was executed on the 3d day of May, 1884, and signed and acknowledged by both parties, and duly recorded in the county of Bee on the 6th day of May, 1884; and for the faithful performance of its conditions, it

bound by express terms the parties thereto, and each of them, and their executors, administrators, heirs, and assigns.

"That on the 3d day of May, 1884, H. D. Sullivan executed a mortgage to the said F. O. Skidmore on said twenty-seven surveys of land to secure said $13,289.25, which mortgage was to be subordinate to a deed of trust on said land to Shattuck & Hoffman for the sum of $40,000.

"That on the 12th day of January, 1888, appellants purchased said twenty-seven surveys of land, including the six hereinbefore described, from H. D. Sullivan by deed with covenants of general warranty, and the consideration therefor to be paid by them was the assumption of the Shattuck & Hoffman mortgage for $40,000 and the said debt for $13,289.25 secured by a mortgage in favor of F. O. Skidmore, but no personal liability was assumed by the appellants.

"That on the 9th day of March, 1888, appellants sold and conveyed the twenty-seven surveys of land, including the six surveys hereinbefore described, to the appellee, and the consideration therefor was the assumption by the said appellee of the payment of the $40,000 secured by deed of trust in favor of Shattuck & Hoffman, and the payment of the $13,289.25, according to the contract between Skidmore and Sullivan, which was secured by mortgage in favor of F. O. Skidmore, and the further sum of $9314.95 to be paid in beef cattle.

"And that on the 3d day of May, 1889, the said F. O. Skidmore had not perfected his title to said six surveys of land, and that the said Sullivan had notified the said Skidmore and the appellee that he was not satisfied with the title thereto; and the appellee was under no obligation to pay to said Skidmore, his remote warrantor, said $13,289.25, and that if he did so pay the same, that it was a voluntary payment and imposed no liability on appellants."

The case was tried without the intervention of a jury, and the court found that appellants were entitled to recover from the appellee for 166 head of beeves at the price of $18.01 per head, and for the sum of $50, the reasonable value of the services in rounding up the cattle in the Stout pasture.

The court found for the appellee on his plea in reconvention the sum of $304.96 for the payment of the taxes due on the land for 1888, and the further sum of $770.66 on appellants' covenant of warranty of title to 385⅓ acres of the James Nowland survey at $2 per acre, which, after being deducted, leaves a balance of $2408.14 in favor of appellants, and for which amount judgment was rendered in their favor, and for costs of suit against appellee.

The appellants contend, that "the court erred in finding that the defendant was entitled to recover from the plaintiffs upon their covenant of warranty of title to the 385⅓ acres of the James Nowland survey, when

the payment of the $13,289.25 to F. O. Skidmore, assumed by the defendant, was upon the express stipulation and condition precedent that the said F. O. Skidmore should perfect his title to the six surveys of land lying in Bee County, one of which was the James Nowland survey, within five years from the 3d day of May, 1884; and the evidence is unqualified and uncontradicted, that the said Skidmore did not perfect his title to said lands, but that the title of the said Skidmore thereto ever has been and is now defective, invalid, null, and void, and that the payment by the defendant to said Skidmore of said $13,289.25, the purchase money of said six surveys, was a voluntary payment, and imposed no liability on these plaintiffs.''

The contract between Skidmore and Sullivan contained substantially the following provisions:

' 1. That the titles to said six surveys are considered possibly defective, and that in perfecting the titles and compromising with adverse claimants, counsel fees, etc., the reasonable expenses thereof shall be a credit on said note.

'' 2. That if after the lapse of five years Sullivan is not satisfied with the title to either or all of said tracts, then the titles with which Sullivan is not satisfied shall be submitted to W. S. Glass, Esq., and if the opinion of this attorney be adverse, then a corresponding credit on the note shall be made; and if Mr. Glass should fail or refuse to act, then certain other attorneys should perform the same office.

'' 3. That if Sullivan shall be satisfied with the titles to the Frazier and Daugherty surveys, or if Glass shall upon reference to him pronounce the same good, then the title to the James Nowland survey shall be considered good, and the whole of the note due and payable.

'' 4. That such lands, the titles to which have been referred to Glass and pronounced not good by him, shall be reconveyed by said Sullivan to Skidmore, and the note credited with $3.25 per acre for every acre so reconveyed.

'' 5. That if Glass pronounced the titles to said tracts, or either of them, not good as aforesaid, and Sullivan be unable to reconvey the same, free of encumbrance, by reason of a deed of trust given by said Sullivan to Shattuck & Hoffman on said land, or for any other cause, then for every acre of land that can not be so reconveyed $3.25 of the amount of said note shall become due and payable.''

The allegations in the pleadings with regard to the successive sales, their dates, terms, and considerations, the execution of warranty titles, and the failure of title to part of the land, and payment of all of the purchase money and taxes by Thornton, were proven substantially as alleged.

The note for $13,289.25 bore interest from date at the rate of 8 per cent per annum, payable annually.

It does not appear that the attorneys referred to for that purpose were ever consulted about the titles, nor that Sullivan was satisfied with them. On the contrary, he notified Thornton before he paid the note that he was not satisfied. Thornton paid the note shortly before its maturity. It does not appear that any of the interest accruing upon it had been previously paid.

Thornton was fully advised when he purchased the land and assumed the payment of the $13,289.25 note of all of the terms of the contract between Skidmore and Sullivan.

It is clear that in addition to the protection furnished the successive vendees with regard to withholding the purchase money for and reconveying the tracts to which the titles were doubtful, warranty deeds for them were in each transaction made.

While the purchaser in each instance could evade the payment of the $13,289.25 note if objections to the titles were not removed, they could not do so without surrendering the lands for which the note was given.

If Sullivan had retained the lands, it was clearly his right to elect to pay the note and continue to hold them, and if the titles, or any of them, should afterwards prove so defective as to cause him to lose them, to then resort to the warranty which was given to him as a cumulative remedy. When he sold the land to appellants he deprived himself of the power to reconvey them, without which he could not resist the payment of the note. His afterwards expressing himself as dissatisfied with the title, and demanding the return of his undischarged note, was an idle ceremony.

By conveying the very lands in dispute to Wood & Welder, and warranting the title to them, he at least transferred to them his election to keep the lands by paying the note.

Wood & Welder conveyed and warranted the titles to the same lands to Thornton, in consideration of his unqualified agreement to pay said note.

With the assumption of the obligation of his vendors to pay for the lands, he acquired the corresponding right to pay for them rather than to surrender them for nonpayment.

Each vendee, including Thornton, by his warranty deed, acquired the right to do the acts necessary to hold the lands, and in the event of the ultimate failure of any part of the titles, to resort to his remedy on the warranty. It appears that all of the warrantors, including Skidmore, are still solvent, but our conclusion does not depend upon that fact.

It appears that the court, in rendering judgment upon the warranty, estimated the land for which the title had failed at $2 per acre, while it is contended that a mathematical calculation will show that he only paid $1.84 per acre, thus making an excess in the judgment of $61.60.

This result is arrived at by considering the principal alone of the $13,289.25 note, while it would seem that the interest accrued upon it,

including interest upon the annual installment of interest that had accrued at the date of Thornton's purchase, should be considered.

Thornton testified, that the true consideration for the land in controversy was estimated to be $2 per acre between him and appellants. By a correct calculation, when interest is included as above, it seems to us to have been a fraction of a cent over $1.99 per acre. The appellant does not seem to have made an effort in the court below to have the judgment corrected in this respect.

Considering the whole testimony, we are not satisfied that there was such error in the judgment in this respect as requires that it should be reformed.

The judgment is affirmed.

*Affirmed.*

Delivered June 3, 1892.

Motion for rehearing refused.